## Smith's Estate.

*Trusts and trustees—Counsel fees—Reasonableness of fees.*

1. In deciding upon the proper compensation of counsel for trustees, the court will consider the extent of the labor performed, the responsibility assumed, the advantage accruing to the estate by reason of the services rendered, the professional standing and experience of the claimant and the amount of money involved.

2. Where the attorney for trustees performed much labor in effecting a sale of 137 pieces of real estate, aggregating in value $375,000, a counsel fee of $5000 was allowed.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1885, No. 478.

The facts appear from the following extract from the adjudication of GEST, J., Auditing Judge:

"Jacob K. Smith, Jr., the former trustee, was discharged by this court on Nov. 24, 1915, and the present accountants, together with J. Addison Abrams, were appointed substituted trustees. The last named, however, died on Nov. 23, 1918.

"The real estate, which is the subject of this trust, was sold under order of court, dated Jan. 20, 1923, for $375,000 to Peter O'Connor, $131,000 in cash and $244,000 in mortgages, the sale being consummated, according to the account, May 4, 1923.

"Lester B. Johnson, Esq., presented his claim for a fee of $5000 for professional services in the matter of the sale of these 137 properties and for disbursements $8.05, and also for a fee of $250 for general services to the trustees from 1919 to date. The claim is objected to by all the parties in interest except Caroline A. Buck, who has a one-fourth share of the income and is prospectively entitled, on the termination of the trust, to one-eleventh of the principal. The court asked the question whether the claim of Mr. Johnson was objected to on the ground that he is not entitled to any fee, and was informed that it is simply a question of the amount.

"Voluminous testimony was taken. Mr. Johnson narrated in detail the services he performed; four members of the Bar, Messrs. Haig, Newbourg, Logue and Remick, testified as to the reasonableness of the amount of his fee, and the testimony of other witnesses, including Mr. Lieberman, the purchaser, Mr. Denney, of the Philadelphia Trust Company, and Harry E. Keller, Esq., one of the trustees, was presented, as appears from the notes. Mr. Johnson's connection with the estate began some ten years ago, when the then trustee, Jacob K. Smith, Jr., was surcharged at the audit of his account. (See Smith's Estate, 24 Dist. R. 435.) In the beginning, he represented Caroline A. Buck, but after the appointment of the new trustees, Mr. Johnson acted as counsel or as one of the counsel for the estate. As to his general services as counsel, from 1919 up to the filing of the present account, the Auditing Judge cannot discover any real objection to the fee claimed of $250. The important question, however, relates to Mr. Johnson's services in connection with the sale of the real estate, the agreement for which was made by the trustees with Peter O'Connor on May 18, 1920, the decree of the court, under which the conveyance was finally made, being obtained on Jan. 20, 1923. I do not think it necessary to review all the testimony that was taken, to which I have given full consideration. I have no doubt that Mr. Johnson was the attorney for the trustees in the matter of the sale of these 137 pieces of real estate and performed services of very considerable value to the estate. In fact, Harry E. Keller, Esq., who is one of the trustees entitled to one-twelfth of the income and representing as attorney Ida Amanda Kramer, entitled to one-fourth, and Lillian K. Stulb, entitled to one-twelfth, a total of five-twelfths of the

Smith's Estate.

income, and representing, as I believe, five-elevenths of the principal in remainder, suggested in his testimony that $2500 would be a fair compensation.

"There are few questions more delicate in their nature or more difficult to decide than the proper compensation of counsel, depending, as it does, on a number of factors, the extent of the labors of counsel, the responsibility assumed by him, the advantage accruing to the estate from his services and the professional standing and experience of the claimant; and, in connection with these elements, the amount of the money involved should be properly considered, affecting, as it does, the advantage or loss to the estate and the proportional responsibility occasioned thereby. When all is said that can be said, in such cases, however, the fact remains that no precise mathematical standard can be applied that will work out a result that is exact to the dollar, and the fixing of a fee in each particular case, after all, is a matter of judicial estimate. In this instance, several distinguished members of the Bar testified and gave their opinions in support of the claim. In some cases, perhaps, expert testimony may be very helpful to the court in arriving at a conclusion. In this case, which concerns matters of a kind with which the Auditing Judge has been very familiar for many years, it is possible that he can reach a decision independent of what would otherwise be a welcome aid. My conclusion is, on reviewing the case, that Mr. Johnson's fee of $5000 is reasonable and proper in all the circumstances of the case, and it will be allowed and charged to the principal of the estate."

*Harry E. Keller* and *Earl W. Thompson*, for exceptions.

*Wallace Childs Stilz*, contra.

PER CURIAM, Dec. 11, 1925.—A careful review of this record vindicates the action of the Auditing Judge, and for the reasons given by him, the exceptions are dismissed and the adjudication is confirmed absolutely.

VAN DUSEN, J., did not sit.

---

## Coven v. Coven.

*Divorce—Suit by minor wife—Necessity of next friend—Who should make the affidavit.*

1. A minor wife suing for divorce must exhibit her libel by her guardian or next friend in order that there may be some one appearing of record who can be held responsible for costs.

2. But the wife herself is the proper person in such case to make the affidavit prescribed by the Act of March 13, 1815, 6 Sm. Laws, 286, and its amendments, negativing collusion between the husband and wife, and averring that the complaint is made, not out of levity, but in sincerity and truth, and the absence of any such affidavit made by the wife is a fatal defect.

Divorce. C. P. Washington Co., Feb. T., 1921, No. 322.

Before Brownson, P. J., and Cummins, J.

*Hugh E. Fergus*, for libellant.

BROWNSON, P. J., April 28, 1925.—Florence Sisley Coven, a minor, by Meleta Sisley, her mother and next friend, sued for a divorce from her husband, Harry Andrew Coven, upon the ground of desertion. The affidavit appended to the libel was made by Meleta Sisley. Thereby she deposed that the averments of fact in the libel "are true to the best of her knowledge and